UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EDWARD V. RAY, JR.,

       Plaintiff,

   v.

CAESAR BASA, et al.,

       Defendants.

Case No.  11-cv-02923-YGR (PR)

**ORDER GRANTING DEFENDANTS'
MOTIONS FOR SUMMARY
JUDGMENT; AND ADDRESSING
PENDING MOTIONS**

On June 16, 2011, Plaintiff Edward V. Ray, Jr., a state prisoner incarcerated at La Palma Correctional Center in Arizona, filed this *pro se* civil rights action under 42 U.S.C. § 1983. Following Plaintiff's incarceration in Santa Rita Jail on multiple robbery charges brought against him in 2006, the Alameda County Social Services Agency, Department of Children and Family Services initiated juvenile dependency proceedings that resulted in him losing custody of his four-year-old daughter, Kymberly Ray.  This matter deals with alleged constitutional violations stemming from incidents prior to and during the dependency proceedings that resulted in him losing custody of his daughter.

Before the Court are Defendants' motions for summary judgment (dkts. 42, 56), which are opposed by Plaintiff.  Also before the Court are various pending motions by the parties.

Having read and considered the papers submitted and being fully informed, the Court hereby GRANTS Defendants' motions for summary judgment and addresses the remaining pending motions filed by the parties.

## PROCEDURAL BACKGROUND

In an Order dated October 12, 2011, the Court included the following background regarding Plaintiff's claims in his original complaint:

> . . . Ray alleged that (1) Oakland police sergeant Caesar Basa took his child into custody on August 27, 2006, without a warrant, (2) Alameda County Department of Children and Family Services caseworker Susan Shaddick conspired with police and violated plaintiff's right to due process when she "furthered the proceedings by the continued seizure of the child," Complaint, p. 3; and (3) Oakland police sergeant George Phillips "made several

United States District Court
Northern District of California

1
2
3
4

unfounded and unproven statements" that were used to remove the child, and amounted to libel, slander, defamation of character and a due process violation.  Ray further alleged that defendant City of Oakland "had a responsibility to ensure that the officers they employ followed the proper laws in the removal of a child from its home." *Id.*  In his prayer for relief, he requested that his parental rights be restored, that the "record" be corrected, that the officers be reprimanded and trained, and that he receive damages.  *Id.*

5
6
7
8
9
10
11

This is not Ray's first effort to sue over the proceedings that resulted in him losing custody of his daughter.  In *Ray v. Hobbs*, No. C 09-252 SI, Ray sued the Alameda County Social Services Agency, Department of Children and Family Services ("DCFS") and DCSF family maintenance worker Nathan Hobbs, alleging they had made defamatory statements that injured plaintiff's reputation and caused him to lose parental rights, including custody of his daughter and the ability to visit with her.  The 2009 case (like this case) was based on the removal of Ray's child on August 27, 2006 and ensuing events.  In the 2009 case, this court granted summary judgment in defendants' favor on February 22, 2011, and the United States Court of Appeal for the Ninth Circuit summarily affirmed the judgment on September 12, 2011.

12   Dkt. 3 at 1-2.

13   In its October 12, 2011 Order in the instant case, the Court determined that Plaintiff's

14   claims appeared on the face of the complaint to be time-barred because the acts and omissions

15   giving rise to these claims took place on or about August 27, 2006, more than four years before

16   this action was filed in June 2011.  Dkt. 3 at 3.  The Court explained that the statute of limitations

17   problem appeared complete and obvious from the face of the complaint, and directed Plaintiff to

18   show cause why the action should not be dismissed as time-barred.  *Id.*

19   On November 7, 2011, Plaintiff filed his response to the Court's October 12, 2011 Order.

20   On January 28, 2012, this matter was reassigned to the undersigned judge.

21   On February 16, 2012, Plaintiff filed an amended complaint, in which he realleged the

22   same claims as those in his original complaint and requested "a jury trial and adding additional

23   damages and defendants. . . ."  Dkt. 8 at 1.  Specifically, Plaintiff added the following Defendants:

24   Oakland Police Department; Alameda County; and Alameda County Social Services Agency

25   Child Welfare Supervisor Tom Nolan.

26   In an Order dated October 30, 2013, the Court inadvertently dismissed the amended

27   complaint without considering Plaintiff's November 7, 2011 response to the Court's October 12,

28   2011 Order.  Dkt. 12.  The Court stated:

2

1

2

3

4

> Instead of responding to the Court's inquiries relating to the statute of limitations, Plaintiff filed an amended complaint realleging the same claims and adding "additional damages and defendants." (Am. Compl. at 1.)  Nowhere in his amended complaint does Plaintiff address the apparent untimeliness of the complaint.  On such a record, Plaintiff has not shown cause why the statute of limitations should not bar this action.

5

Dkt. 12 at 2.

6

7

8

On November 21, 2013, Plaintiff filed a notice of appeal, alerting the Court that it had dismissed the amended complaint without considering the full record -- i.e., Plaintiff's November 7, 2011 response relating to the statute of limitations problem.

9

10

On November 25, 2013, the Ninth Circuit filed its Order referring the matter to this Court for a determination whether Plaintiff's *in forma pauperis* status should continue on appeal.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

On December 11, 2013, this Court construed Plaintiff's notice of appeal to be a motion for reconsideration and granted it.  Because Plaintiff *did* respond to the Court's October 12, 2011 Order, the October 30, 2013 Order of Dismissal and Judgment were vacated and the case was reopened.[1]  The Court then considered Plaintiff's November 7, 2011 response to its October 12, 2011 order to show cause why this action should not be dismissed as time-barred.  Among other reasons, Plaintiff claims that he is entitled to two years of tolling of the statute of limitations period for the disability of imprisonment because he was not released from custody during pretrial proceedings and he is now in prison serving a prison term of less than life.  *See* Cal. Civ. Proc. Code § 352.1.  Plaintiff also claims that he "only recently learned of the 'critical facts' of his injury, which are 'that he has been hurt and who has inflicted the injury.'" Dkt. 5 at 2 (emphasis in original).  The Court then determined that Plaintiff's statements in his November 7, 2011 response led it to conclude that it cannot *sua sponte* dismiss the amended complaint (the operative complaint in this action) as time-barred.  The Court added that Plaintiff might be able to avoid a statute of limitations bar to his amended complaint.  However, the Court stressed as follows: "This is not a determination that the amended complaint is timely but instead is only a determination that

26

27

28

---

[1] Thereafter, the Ninth Circuit dismissed the appeal for lack of jurisdiction because the district court vacated the judgment and reopened the case.  Dkt. 32.  The Ninth Circuit then issued its mandate.  Dkt. 34.

United States District Court
Northern District of California

3

the Court is unable at this point to conclusively determine that the amended complaint is barred by the statute of limitations." Dkt. 17 at 4.

The Court then reviewed the amended complaint, which realleged the same four claims from his original complaint mentioned above dealing with Defendants Basa, Shaddick, Phillips and the City of Oakland.  In addition, Plaintiff submitted documentation indicating that a child dependency petition was filed under California Welfare & Institutions Code § 300(b) alleging that he and his wife failed to protect Kymberly.  As explained above, Plaintiff added the Oakland Police Department, the County of Alameda and Defendant Nolan (Defendant Shaddick's supervisor) as named Defendants.  Plaintiff alleged Defendants violated his constitutional rights prior to and during the child dependency proceedings in Alameda County.  Specifically, Plaintiff alleged that Defendants Basa, Shaddick, Phillips and Nolan made false statements that he was unable to provide care to his daughter.  Plaintiff also alleged that all or some of these Defendants falsely reported that he had a substance abuse problem, that he and his wife engaged in domestic violence in their daughter's presence, and that his trailer home had no running water, no working refrigerator, and no working toilet facilities.  Allegedly as a result of these statements (specifically those dealing with substance abuse and domestic violence), Plaintiff lost his parental rights, lost his visitation rights, and his wife was awarded sole custody of the daughter.  Plaintiff further alleged that Defendants Oakland Police Department and the County of Alameda are liable as municipal defendants (similar to his claim against Defendant City of Oakland) for the aforementioned actions of Defendants Basa, Shaddick, Phillips and Nolan.  Plaintiff seeks punitive damages.

The Court found that the amended complaint, liberally construed, stated a claim under 42 U.S.C. § 1983 for due process violations by Defendants Basa, Shaddick, Phillips and Nolan for their alleged involvement prior to and during child dependency proceedings in which the county and county agents sought Kymberly's removal based on false information. The Court also found that, liberally construed, the allegations of the amended complaint stated a section 1983 defamation claim against Defendant Phillips.  The Court served the aforementioned Defendants and set a briefing schedule.  The municipal liability claim against the remaining Defendants,

United States District Court
Northern District of California

4

United States District Court
Northern District of California

1   City of Oakland, Oakland Police Department or County of Alameda, were dismissed because

2   Plaintiff had not alleged a claim based on any theory other than that of respondeat superior, which

3   is not a sufficient ground for municipal liability.

4       Pursuant to the briefing scheduled, Defendants have filed the instant motions for summary

5   judgment, in which the bulk of their argument is that Plaintiff's claims are time-barred.

6       Also before the Court are the following pending motions filed by the parties:

7     (1) Plaintiff's "Motion to Strike Defendants' Affirmative Defenses and the Reservation
8          Clause(s) if any" (dkt. 46);

9     (2) Plaintiff's motion to strike portions of Defendants Shaddick and Nolan's motion for
10          summary judgment (dkt. 47), which Defendants Shaddick and Nolan oppose;

11     (3) Plaintiff's motion for additional sanctions (dkt. 60); and

12     (4) Defendants Shaddick and Nolan's "Objection to and Motion to Strike Plaintiff's
13          Untimely Request for Judicial Notice and Additional Exhibit" (dkt. 68).

**PENDING MOTIONS**

## I.    PLAINTIFF'S MOTIONS TO STRIKE

15       Plaintiff has filed two motions to strike.  Dkts. 46, 47.

16       Because the Court is resolving the pending motions for summary judgment, it first will

17   handle Plaintiff's "motion to strike" portions of Defendants Shaddick and Nolan's motion for

18   summary judgment pursuant to Federal Rule of Civil Procedure 12(f).  Dkt. 47.  Specifically,

19   Plaintiff moves to strike "pages 3:4 - 10:19" of the memorandum in support of Defendants

20   Shaddick and Nolan's motion for summary judgment.  *Id.* at 1.

21       Federal Rule of Civil Procedure 12(f) provides that the Court may order stricken "**from**

22   **any pleading** any insufficient defense or any redundant, immaterial, impertinent, or scandalous

23   matter." Fed. R. Civ. P. 12(f) (emphasis supplied).  The function of a Rule 12(f) motion to strike

24   is to avoid the expenditure of time and money that must arise from litigating spurious issues by

25   dispensing with those issues prior to trial . . . ."  *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d

26   970, 973 (9th Cir. 2010) (quotation and citation omitted).  In order to determine whether to grant a

27   motion to strike under Rule 12(f), the Court must determine whether the matter the moving party

1   seeks to have stricken is (1) an insufficient defense; (2) redundant; (3) immaterial; (4) impertinent;

2   or (5) scandalous.  *Id.* at 973-74.

3        Motions to strike are not favored and "should not be granted unless it is clear that the

4   matter to be stricken could have no possible bearing on the subject matter of the litigation."

5   *Colaprico v. Sun Microsystems, Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991).  When a court

6   considers a motion to strike, it "must view pleadings in a light most favorable to the pleading

7   party."  In re 2TheMart.com, Inc. Sec Lit., 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000).  A court

8   must deny the motion to strike if there is any doubt whether the allegations in the pleadings might

9   be relevant in the action.  *Id.*  However, a motion to strike is proper when a defense is insufficient

10  as a matter of law.  *Chiron Corp. v. Abbott Labs.*, 156 F.R.D. 219, 220 (N.D. Cal. 1994).

11       None of these documents which Plaintiff seeks to strike are "pleadings" under the Federal

12  Rules of Civil Procedure, rather they are portions of Defendants' filings.   More specifically,

13  Plaintiff moves to strike portions in Defendants Shaddick and Nolan's factual background relating

14  to the initial removal of Kymberly, the dependency proceedings, and the termination of Plaintiff's

15  parental rights; as well as the procedural background relating to Plaintiff's prior action, Case No.

16  C 09-0252 SI (PR).  The federal rules do not provide a procedural basis for "striking" these

17  documents.  A "pleading" is defined in Federal Rules of Civil Procedure 8-11.  They are

18  commonly referred to as complaints or answers.  Moreover, Plaintiff's motion to strike appears to

19  be no more than an evidentiary objection submitted in a separate document, contrary to Local Rule

20  7-3(a) and (c) (evidentiary objections must be contained within the brief or memorandum).  The

21  Court therefore DENIES Plaintiff's motion to strike the aforementioned portions of Defendants

22  Shaddick and Nolan's motion for summary judgment.  Dkt. 47.

23       As explained below, the Court herein grants both motions for summary judgment,

24  therefore, it will DENY as moot Plaintiff's remaining "Motion to Strike Defendants' Affirmative

25  Defenses and the Reservation Clause(s) if any."  Dkt. 46.

26  **II.    DEFENDANTS' MOTION TO STRIKE**

27       Defendants also filed motions to strike but under Civil Local Rule 7-3(d) on the grounds of

28  timeliness.  Accordingly, the Court reviews the rule and the procedural history of the filings.

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

Local Rule 7.3(d) provides that with regard to a motion, "[o]nce a reply is filed, no additional memoranda, papers or letters may be filed without prior Court approval," except for objections to reply evidence, or relevant judicial opinions published after the reply or opposition was filed.

Here, Defendants Shaddick and Nolan filed their motion for summary judgment before the remaining Defendants Basa and Phillips.  Plaintiff opposes both motions.  In the course of opposing these motions, Plaintiff has filed various supporting documents, including a request for judicial notice in support of his opposition to Defendants Basa and Phillips's motion for summary judgment (dkt. 64) and additional exhibits (dkt. 67).  Defendants Shaddick and Nolan have filed a motion to strike these two supporting documents arguing both are untimely pursuant to Civil Local Rule 7.3(d) because the Shaddick/Nolan reply had already been filed.

The Court disagrees.  The supporting documents were not untimely filed because they were filed in opposition to Defendants Basa and Phillips' motion for summary even though they were also filed *after* Plaintiff opposed Defendants Basa and Phillips' motion for summary judgment.  The supporting documents do not measurably impact the latter motion.  First, the additional exhibit filed relates to the defamation claim against Defendant Phillips and is in no way related to Plaintiff's claims against Defendants Shaddick and Nolan.  Second, Plaintiff's request for judicial notice relates to the status of his appeal (as of the time he filed it) of his prior case, Case No. 09-0252 SI (PR).  Notwithstanding Plaintiff's filing, the docket of his prior case, including information about the affirmance on appeal, is available to the Court.  Accordingly, the Court DENIES Defendants Shaddick and Nolan's motion to strike the supporting documents.[2] Dkt. 68.

## III.    PLAINTIFF'S MOTION FOR ADDITIONAL SANCTIONS

On June 23, 2014, Plaintiff filed a "Motion for Additional Sanctions," stating that Defendant Phillips's answer was overdue.  Dkt. 60.  The record shows that at the time Plaintiff

---

[2] Even though it has denied the motion to strike Plaintiff's supporting documents, the Court refrains from making any ruling on the *relevance* or the *admissibility* of these documents as it has indicated below which of Plaintiff's *verified* admissible documents it will be considering in resolving the pending motions for summary judgment.  *See infra* at 14.

signed his motion on June 17, 2014 (dkt. 60 at 2), Defendant Phillips had already filed his answer on June 16, 2014 (dkt. 55). While the answer was overdue, the Court finds that Defendant Phillips's attorney, Arlene Rosen, Esq., has not been as delinquent in meeting deadlines as she has in Plaintiff's other pending civil right action, Case No. C 11-5550 YGR (PR), against the Oakland Police Department officers who arrested Plaintiff for the robbery charges in 2006. In that action, Attorney Rosen was ordered to pay sanctions in the amount of $150.00 for her numerous delays in filing the dispositive motion for that case. Dkt. 38 Case No. C 11-5550 YGR (PR) at 2. While the Court does not condone Attorney Rosen's pattern of missing deadlines, it finds that additional sanctions in the *instant* case—for missing the deadline to file Defendant Phillips's answer—are not warranted. Therefore, Plaintiff's "Motion for Additional Sanctions" is DENIED. Dkt. 60.

# DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

## I.     FACTUAL BACKGROUND

The following factual background—related to the relevant Juvenile Dependency Petition and Proceedings—is taken from the Judge Illston's February 22, 2011 Order Granting Defendants' Motion for Summary Judgment in Plaintiff's prior case, Case No. C 09-0252 SI (PR).

### I.     Juvenile Dependency Petition and Proceedings Regarding Kymberly Ray

On August 27, 2006, plaintiff's child, Kymberly Ray, was taken by police from the family home when plaintiff and his two adult children were arrested for armed robbery. (MSJ, Declaration of Alameda County Deputy County Counsel Todd Boley ("Decl. Boley"), Ex. A; Pl.'s Opp. Mot. Summ. J. ("Opp.") at 3-4). On August 29, 2006, DCFS initiated a juvenile dependency petition regarding Kymberly. (Decl. Boley, Ex. A at 11–13; Am. Compl. at 2). In the petition, child welfare worker Susan Shaddick ("Shaddick") alleged that Kymberly came within the jurisdiction of the juvenile court pursuant to § 300(b) of the California Welfare & Institutions Code. (*Id.*). In relevant part, this section states:

> Any child who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge that person to be a dependent child of the court: [. . .]
>
> (b)     The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, or the willful or negligent failure of

the child's parent or guardian to adequately supervise or protect the child from the conduct of the custodian with whom the child has been left, or by the willful or negligent failure of the parent or guardian to provide the child with adequate food, clothing, shelter, or medical treatment, or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse.

Cal. Welf. & Inst. Code § 300.

The dependency petition specifically stated that "[t]he mother and father, Tina and Edward Ray, have substance abuse problems that render them unable to provide appropriate care to their four-year-old daughter, Kymberly Ray . . . ." (Decl. Boley, Ex. A at 13; Am. Compl. at 3).  In support of this statement, the petition listed the following allegations:

a)      The father and the parents' adult children were arrested for armed robbery on August 27, 2006, and are currently incarcerated at Santa Rita Jail for multiple robberies;

b)      The minor, Kymberly Ray, said that her father, brother and sister had been arrested for "going out robbing" and that her mother had told her this;

c)      The mother and father have engaged in domestic violence in the presence of the minor and the minor has seen the father hit her mother in the face;

d)      The mother says the father was court-ordered into domestic violence treatment, but he left the state and then was extradited back;

e)      The trailer in which the family was living was without running water, toilet facilities, or a working refrigerator;

f)      The mother admits to using crack cocaine as recently as two days ago and alcohol with the father and their adult children in a trailer where the family was living;

g)      The mother says that she drank alcohol because the father "made her" and she was afraid she would be beaten if she did not.

(Decl. Boley, Ex. A at 13; Am. Compl. at 3).

On August 30, 2006, Shaddick filed a detention report regarding Kymberly wherein Shaddick detailed the circumstances surrounding the conditions that prompted Kymberly's detention in protective custody.   (Decl. Boley, Ex. A at 1-10).   These

circumstances supported Shaddick's statements in the dependency petition. The detention report requested that Kymberly continue to be detained in foster care because there was a substantial danger to Kymberly's physical or emotional health and there was no reasonable means by which to protect her without removing her from her parents' physical custody. (Decl. Boley, Ex. A at 8). A hearing was set for September 14, 2006. (Decl. Boley, Ex. A at 6).

On September 8, 2006, plaintiff's counsel, Jason Davis, filed an Order for Prisoner's Appearance at Hearing Affecting Prisoner's Parental Rights so that plaintiff could appear at the September 13, 2006 hearing. (Decl. Boley, Ex. B). That same day, an Alameda County judicial officer issued an order to deliver plaintiff into the custody of the Alameda County Deputy Sheriff for the hearing. (*Id.*).

On September 13, 2006, Shaddick filed a jurisdiction report which repeated the statements made in the detention report. (Decl. Boley, Ex. C). Shaddick asked that the court find the allegations in the jurisdiction report to be true and recommended that Kymberly remain in foster care for two weeks until she could join her mother at a residential drug treatment program, Project Pride. (Decl. Boley, Ex. C; see Am. Compl. at 2).

At the hearing on September 13, 2006, plaintiff signed a Waiver of Rights-Juvenile Dependency form on which he indicated that he read and understood the petition filed by Shaddick, that he requested the court to appoint him an attorney and that he wished to submit the petition on the basis of the social worker's or probation officer's report and other documents, if any. (Decl. Boley, Ex. D). Plaintiff also indicated that by submitting the petition on the social worker's report, he was his waiving rights to: (1) a trial or hearing; (2) the right to see and hear witnesses who testify; (3) the right to cross-examine witnesses, the social worker or probation officer who prepared the report and the witnesses' statements contained therein; (4) the right to testify on his own behalf and to present his own evidence and witnesses; (5) the right to use the authority of the court to compel witnesses to come to court and produce evidence; and (6) any privilege against self-incrimination in the proceeding. (*Id.*). He also indicated that he understood that: (1) if he submitted the petition on the report, the court would probably find the petition true; (2) if the petition were found true and the child was declared a dependent of the court, the court may assume custody of the child and not offer or provide reunification services to plaintiff; and (3) if the court assumed and retained custody of the child for 12-18 months it would make a permanent plan for Kymberly that could result in the termination of plaintiff's parental rights. (*Id.*). After plaintiff waived the aforementioned rights, his attorney indicated by signature that he explained to plaintiff his rights and the consequences of submitting the petition. (*Id.*).

A minute order from the September 13, 2006 hearing indicated that both plaintiff and the child's mother were present, that the reports by Shaddick and DCFS were admitted into evidence and that the parents had waived the aforementioned rights. (Decl. Boley, Ex. E at 1). The court ordered plaintiff and Kymberly's mother to

return to the courtroom on September 28, 2006 for an uncontested jurisdictional hearing. (*Id.* at 1–2).

On October 3, 2006, Shaddick filed an addendum report wherein she recommended that Kymberly Ray be committed to DCFS for suitable placement with her mother as long as her mother remained in residential drug treatment. (Decl. Boley, Ex. F at 3). Shaddick also stated that there was clear and convincing evidence that parental reunification services should be denied to plaintiff, as he was incarcerated on serious charges, including twenty-seven counts of armed robbery, and he would "more than likely" not be able to reunify with his daughter in the time provided by law. (*Id.* at 4). Shaddick went on to say that DCFS did not believe there would be a detriment to Kymberly if reunification services were denied to plaintiff, and any detriment that might incur would be mitigated by the child's placement with her mother, who was receiving reunification services. (*Id.*).

A minute order from the October 3, 2006 hearing indicated that both parents appeared by separate counsel at the hearing, that all reports from DCFS were admitted into evidence, and that Kymberly would remain in the custody of DCFS and reside in the residential treatment facility with her mother. (Decl. Boley, Ex. G at 1). The court adjudged Kymberly a dependent child of the court, denied reunification services to plaintiff, and transferred the matter to DCFS for monitoring. (*Id.*).

## II.   Defendant Hobbs' Involvement in Managing Kymberly Ray's Case

In October 2006, Kymberly's case was assigned to DCFS family maintenance worker defendant Hobbs. (*See* MSJ, Decl. Nathan Hobbs ("Decl. Hobbs"), p. 1, ¶ 1& p. 2, ¶ 3). As a family maintenance worker, defendant Hobbs was required to monitor the children on his caseload and to implement corresponding court orders. (*Id.*, pp. 1-2, ¶ 2). Defendant Hobbs also was responsible for reporting to the court on a regular basis regarding the children's progress. (*Id.*). Defendant Hobbs had no role in the initial removal of Kymberly Ray from her home, the filing of the juvenile dependency petition with the court, the finding by the court that Kymberly was properly in its jurisdiction or the order issued by the court denying reunification services to plaintiff. (Decl. Hobbs, p. 2, ¶ 3; see Opp. at 6 & 14).

On March 7, 2007, defendant Hobbs filed a status review report with the court, his first appearance in the proceedings. (*See* Decl. Hobbs, p. 2, ¶ 5; Decl. Boley, Ex. H). In this report, defendant Hobbs stated that he had received information from the residential treatment program where Kymberly and her mother were residing that Kymberly had "perform[ed] sexually explicit acts on two boys (age 5 and 8)," displayed "other forms of sexualized behavior" and exhibited "boundary/personal space issues" with staff. (Decl. Hobbs, Ex. H at 7; *see* Decl. Hobbs, p. 2, ¶ 5; Am. Compl. at 4 & 7). Defendant Hobbs stated that Kymberly was receiving counseling for these issues. (Decl. Hobbs, p. 2, ¶ 5; Decl. Boley, Ex. H at 7-8). Defendant Hobbs' report incorporated the allegations of the August

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

29, 2006 Petition submitted by Shaddick and recommended that the court retain jurisdiction over Kymberly for another six months until her mother completed her residential treatment program. (Decl. Boley, Ex. H at 1 & 4). Defendant Hobbs did not discuss any recommendations pertaining to plaintiff in this report. (Decl. Hobbs, p. 2, ¶ 6; see Decl. Boley, Ex. H).

A minute order from the March 16, 2007 hearing indicated that both parents' counsel were present. (Decl. Boley, Ex. I at 1). The court adopted defendant Hobbs' March 16, 2007 findings, retained jurisdiction over Kymberly, and gave defendant Hobbs permission to transport Kymberly to see her father in custody. (*Id.* at 1-2).

On March 20, 2007, plaintiff was convicted of twenty-one counts of armed robbery with enhancements for utilizing firearms and knives in the commission of the crimes and for inflicting great bodily harm. (Decl. Boley, Ex. O). Plaintiff was sentenced to thirty-eight years and four months in state prison. (*Id.*).

Defendant Hobbs filed a second status review report on August 14, 2007. (Decl. Boley, Ex. J). In this report, defendant Hobbs stated that Kymberly and her mother were still living at the residential treatment program and that plaintiff was serving his state prison sentence at San Quentin State Prison. (*Id.* at 2). Defendant Hobbs then stated that he had made two attempts to bring Kymberly to visit plaintiff, but that they were unsuccessful. (*Id.* at 6). Defendant also indicated in this report that there was a suspicion of child abuse by plaintiff, based on the following alleged incident:

> In May it was reported that the minor told another four-year-old Project Pride resident to insert a toy shark down the back of her pants. When another [] resident talked to the minor about the incident, the minor reportedly disclosed that "My [d]ad touched me there." This alleged disclosure prompted a CALICO Center Interview . . . on 5/24/2007[;] however the forensic interview yielded no evidence of sexual maltreatment. Nevertheless, a strong suspicion remains among the therapists and program staff that the minor may have endured some form of sexual abuse.

(*Id.* at 5-6).

Defendant Hobbs also stated in this report that he believed visitation with plaintiff was not advisable at the time because: "1) the minor becomes upset when the father is mentioned and does not want to visit him, 2) there are suspicions of the father's role in sexually inappropriate behavior toward the minor, and 3) the father is placed in a high-security out-of-county state prison." (Decl. Boley, Ex. J at 8). Defendant Hobbs recommended that the court retain jurisdiction over Kymberly, but did not make any custody or reunification recommendations with respect to plaintiff. (*Id.* at 11-12).

12

United States District Court
Northern District of California

A minute order from the August 24, 2007 hearing indicated that the mother appeared represented by counsel and that plaintiff appeared by counsel, Erlinda Castro. (Decl. Boley, Ex. K at 1). The court adopted defendant Hobbs' August 14, 2007 findings and retained jurisdiction over Kymberly. The court did not make any orders regarding plaintiff. (*Id.* at 1–2).

On February 13, 2008, defendant Hobbs filed a final status review report regarding Kymberly's custody. (Decl. Boley, Ex. L). Defendant Hobbs recommended in this report that the court terminate its jurisdiction over Kymberly and award custody to her mother. (*Id.* at 11-12). The report did not make any recommendations pertaining to plaintiff, but noted that he was now incarcerated at High Desert State Prison in Susanville (Lassen County) California. (*Id.* at 6).

On February 19, 2008, the court entered a final judgment regarding custody of Kymberly, which terminated its jurisdiction over Kymberly and awarded custody to her mother. (Decl. Boley, Ex. M). The court did not award any visitation rights to plaintiff. (*Id.*).

Dkt. 27 in Case No. C 09-0252 SI (PR) at 2-7.

## II.   LEGAL STANDARD

### A.   Summary Judgment

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. On an issue for which the opposing party by contrast will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

United States District Court
Northern District of California

1  Once the moving party meets its initial burden, the nonmoving party must go beyond the

2  pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a

3  genuine issue for trial." Fed. R. Civ. P. 56(e). The court is only concerned with disputes over

4  material facts and "factual disputes that are irrelevant or unnecessary will not be counted."

5  *Anderson*, 477 U.S. at 248. It is not the task of the court to scour the record in search of a genuine

6  issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party

7  has the burden of identifying, with reasonable particularity, the evidence that precludes summary

8  judgment. *Id*. If the nonmoving party fails to make this showing, "the moving party is entitled to

9  a judgment as a matter of law." *Celotex*, 477 U.S. at 323.

10  Only admissible evidence may be considered in ruling on a motion for summary judgment.

11  *Orr v. Bank of Am.*, 285 F.3d 764, 773 (9th Cir. 2002). As noted, Plaintiff has filed oppositions to

12  Defendants' motions for summary judgment; however, the oppositions are not verified and will

13  not be considered because they were not signed under "penalty of perjury." Dkts. 48 at 27; 62 at

14  34. However, because the original complaint as well as Plaintiff's affidavit and declaration in

15  support of one of his oppositions are verified, dkts. 1 at 4, 62-1 at 4; 63 at 3, the Court will

16  construe them as opposing affidavits under Federal Rule of Civil Procedure 56, insofar as it is

17  based on personal knowledge and sets forth specific facts admissible in evidence. *See Schroeder*

18  *v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995).

19  **B.     Statute of Limitations Generally**

20  Section 1983 does not contain its own limitations period. The appropriate period is that of

21  the forum state's statute of limitations for personal injury torts. *See Wilson v. Garcia*, 471 U.S.

22  261, 276 (1985), *partially superseded by statute as stated in Jones v. R.R. Donnelley & Sons Co.*,

23  541 U.S. 369, 377-78 (2004). In California, the general residual statute of limitations for personal

24  injury actions is the two-year period set forth at California Civil Procedure Code § 335.1 and is the

25  applicable statute in section 1983 actions. *See Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir.

26  2004). It is federal law, however, that determines when a cause of action accrues and the statute

27  of limitations begins to run in a section 1983 action. *Wallace v. Kato*, 549 U.S. 384, 388 (2007).

28  Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury

14

which is the basis of the action.  *See TwoRivers v. Lewis*, 174 F.3d 987, 991-92 (9th Cir. 1999).

A federal court must give effect to a state's tolling provisions.  *See Hardin v. Straub*, 490 U.S. 536, 543-44 (1989); *Marks v. Parra*, 785 F.2d 1419, 1419-20 (9th Cir. 1986).  California Civil Procedure Code § 352.1 recognizes imprisonment as a disability that tolls the statute of limitations when a person is "imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than for life."  Cal. Civ. Proc. Code § 352.1(a).  The tolling is not indefinite, however, the disability of imprisonment delays the accrual of the cause of action for a maximum of two years.  *See id.*  Tolling under section 352.1 is triggered by the plaintiff's arrest and incarceration.  *See Elliott v. City of Union City*, 25 F.3d 800, 802-03 (9th Cir. 1994).

### C.    Analysis of Due Process Claims

#### 1.    Accrual Dates of Plaintiff's Claims and State's Tolling Provisions

Here, Plaintiff has raised due process claims against two sets of Defendants: Defendants Shaddick and Nolan, Alameda County child welfare workers ("County Defendants"); and Defendants Basa and Phillips, officers from the Oakland Police Department ("OPD Defendants").

The Court will first calculate the date Plaintiff's claims accrued against each set of Defendants below.  In addition, as mentioned above, this Court also must give effect to California's tolling provisions.  *See Hardin*, 490 U.S. at 543-44.  Under California Code of Civil Procedure § 352.1, the two-year statute of limitations applicable to Plaintiff's claims should be tolled for another two years because Plaintiff has been continuously incarcerated since his arrest on August 27, 2006.  Cal. Civ. Proc. Code § 352.1(a); *see Elliott*, 25 F.3d at 802-03.  Further, the parties agree that Petitioner was sentenced to a term that is less that life; dkt. 59 at 4; therefore, he is entitled to the benefit of statutory tolling as prescribed in section 352.1.  *Id.*

#### a.    Due Process Claim Against County Defendants

As explained above, Plaintiff sues the County Defendants over statements made in Plaintiff's dependency case.  Specifically, Defendant Shaddick filed the dependency petition, which included her name and signature, against Plaintiff on August 29, 2006.  Shaddick Decl., Ex. 1.  Thereafter, Defendant Shaddick submitted reports to the dependency court, each of which contained her name and signature at the end, as well as the name and signature of her supervisor,

Defendant Nolan.  Shaddick Decl., Exs. 2, 3, 4.  Copies of each of these documents were provided to Plaintiff at the time they were filed with the dependency court, as required by Welfare & Institutions Code § 302.  Shaddick Decl. ¶¶ 8-11.  At a hearing on September 13, 2006, Plaintiff filed a signed waiver of rights form, stating that he "read the petition" and "understands it."  Widen Decl., Ex. 7.  Plaintiff also stated that he intended to "submit the petition on the basis of the social worker's or probation officer's report and other documents, if any."  Widen Decl., Ex. 7.  Plaintiff personally appeared in dependency court on September 13, 2006, alongside Defendant Shaddick, and Plaintiff was also present at that time the dependency court entered an order finding that the allegations of the dependency petition were true, and that the removal of Kymberly was appropriate.  Widen Decl., Ex. 6.

Based on this evidence, Plaintiff knew or should have known of the identities of Defendants Shaddick and Nolan, and of their alleged misconduct by the September 13, 2006 dependency court hearing, at the latest.  As mentioned above, in the waiver of rights form he signed on that date, Plaintiff acknowledged *reading* the dependency petition that clearly identified Defendant Shaddick by name.

Plaintiff argues that he should be entitled to a delayed accrual date of June 11, 2010, which is the date he claims that he was provided with Defendant Shaddick's name during discovery in his prior action, Case No. 09-0252 SI (PR).  Dkt. 5 at 2.  The Court assumes Plaintiff argues that he is entitled to the same delayed accrual date as to his claim against Defendant Nolan.  In his opposition to the County Defendants' motion, Plaintiff claims that he was "under the influence of medication on 9-13-06 [dependency court hearing] due to the injuries he suffered at the hands of the arresting officers on 8-27-06."  Dkt. 48 at 14.  He also claims that during the dependency court hearing, Defendants Shaddick and Nolan failed to introduced themselves; therefore, Plaintiff claims he did not know who they were.  *Id.* at 19-20.  Plaintiff also claims that the "waiver of rights form" was "never fully explained to [him]."  *Id.* at 20.  Plaintiff states that his counsel told him that by signing it would be a "way to get the child re-united with the mother, so the sooner [he] sign[ed] it, the quicker [his] child will be put into the program with Tina and get out of foster care" *Id.*  First, the aforementioned statements were not signed under the penalty of perjury so

16

1    they are not verified; therefore, the Court need not consider them.  However, even if they were

2    verified, the Court finds that Plaintiff has not shown that he was diligent in discovering

3    Defendants Shaddick and Nolan's names as those being responsible for Kymberly's removal.

4         The statute of limitations generally begins to run only once a plaintiff has knowledge of the

5    "critical facts" of his injury, which are "that he has been hurt and who has inflicted the injury."

6    *United States v. Kubrick*, 444 U.S. 111, 122 (1979).  But the plaintiff must be diligent in

7    discovering the critical facts.  *See Bibeau v. Pacific Northwest Research Found.*, 188 F.3d 1105,

8    1108 (9th Cir. 1999), *amended*, 208 F.3d 831 (9th Cir. 2000).  A plaintiff who does not actually

9    know that his rights were violated will be barred from bringing his claim after the running of the

10   statute of limitations if he should have known in the exercise of due diligence.  *See id.*

11        Even if Plaintiff did not know Defendants Shaddick and Nolan's names, the Court finds

12   that he could have brought his claim against them as Doe Defendants in his prior action, Case No.

13   09-0252 SI (PR).  But he did not.  Instead, Plaintiff took him almost *five* years after the 2006

14   dependency court hearing to file the instant action on June 14, 2011.  In addition, the Court notes

15   that Plaintiff claims he allegedly discovered Defendants Shaddick and Nolan's involvement on

16   June 11, 2010; however, he still waited a year before he filed the instant action on June 16, 2011.

17   While Plaintiff claims he was heavily medicated and pressured by his counsel when he signed the

18   waiver on September 13, 2006, he fails to explain why it took him almost *four* years to discover

19   Defendant Shaddick and Nolan's names when through diligence he could have had access to the

20   relevant paperwork from that 2006 dependency hearing much earlier.  The record also shows, and

21   Plaintiff concedes that the entire process took a "total of 18 months, from 8-27-06 until 2-19-08,"

22   which ended in his losing his parental rights over Kymberly. Dkt. 62 at 16.  At any time during

23   this eighteen month period, Plaintiff could have exercised diligence in determining Defendants

24   Shaddick and Nolan's names.  The record shows that after the September 13, 2006 hearing,

25   Defendant Shaddick submitted an Addendum Report dated October 3, 2006 to the dependency

26   court, which Plaintiff could have gained access to through diligence.  Even though the matter was

27   transferred to DCFS on October 3, 2006, and Defendants Shaddick and Nolan's involvement in

28   the dependency matters ended on that date, the Court finds that through diligence Plaintiff could

United States District Court
Northern District of California

1    have gained access to many of the earlier reports to discover their names.  But he did not.  Instead,

2    Plaintiff waited until June 11, 2010—*four* years after Kymberly's removal and *two* years after his

3    parental rights were terminated—to determine Defendants Shaddick and Nolan's names (allegedly

4    when he received discovery in his prior action).  Therefore, because Plaintiff has failed to show

5    that he acted diligently in determining Defendants Shaddick and Nolan's names, the Court finds

6    unavailing Plaintiff's argument for a delayed accrual date.

7         Accordingly, the Court finds Plaintiff's cause of action against the Court Defendants

8    accrued no later than the September 13, 2006 dependency hearing.  Applying two years of

9    statutory tolling for incarceration, the two-year statute of limitations on Plaintiff's claims began to

10   run on September 13, 2008 and ended on September 13, 2010.  Plaintiff did not file this action

11   until June 14, 2011, nine months after the two-year statute of limitations expired.  Plaintiff's

12   claims against the County Defendants, therefore, are barred by the statute of limitations, and they

13   should be dismissed unless Plaintiff can show that he is entitled to an extension of the limitations

14   period on equitable grounds below.

15                          **b.    Due Process Claim Against OPD Defendants**

16        Meanwhile, as to the OPD Defendants who were involved in Kymberly's removal into

17   protective custody, Plaintiff knew or should have known about the circumstances and individuals

18   involved in the removal either: by August 27, 2006, the date of his arrest, the search of the trailer,

19   and Kymberly's removal; or by August 29, 2006, the filing date of the dependency petition; or by

20   August 30, 2006, the filing date of the Detention Report, or by the September 13, 2006

21   dependency court hearing when he signed his waiver of rights form in which he acknowledged

22   reading the dependency petition.  Just as it has above, the Court will consider the latest date that

23   Plaintiff should have known about OPD's involvement in the removal.  Therefore, Plaintiff's

24   cause of action against the OPD Defendants accrued no later than September 13, 2006.

25        Plaintiff argues that he should be entitled to a delayed accrual date because he was "not

26   aware that Basa and/or Phillips['s] statements were the driving force behind the reason for

27

28

removal of Plaintiff[']s child until July 23, 2010." Dkt. 62 at 13.[3]  Plaintiff claims that prior to 2010, all he knew was that "the police" were involved in the removal; however, "no names [were] ever mentioned." *Id.* at 19.  Plaintiff only became aware that Defendants Basa and Phillips were involved in the removal when he read the trial transcripts in 2010.  *Id.*  The Court notes that Plaintiff admits that prior to 2010, he *was* aware of Defendants Basa and Phillips's involvement in his criminal case because they were the officers who interviewed him on August 27, 2006 after he was arrested.  *Id.* at 13.  Plaintiff, however, claims that neither Defendants mentioned during the nine-minute long interview that they had been involved in Kymberly's removal.  *Id.*  Plaintiff also states that Kymberly's mom, Tina, and older sister, Melissa, were present during the removal, and they were all taken to the police station along with Kymberly on August 27, 2006.  *Id.* at 14

As explained above, the statute of limitations generally begins to run once Plaintiff has knowledge of the "critical facts" of his injury, which are "that he has been hurt and who has inflicted the injury."  *Kubrick*, 444 U.S. at 122.  However, Plaintiff must be diligent in discovering the critical facts.  *See Bibeau*, 188 F.3d at 1108.  Because Plaintiff seems to be claiming that he did not know the names of those that violated his rights, Plaintiff could be barred from bringing his claim after the running of the statute of limitations if he should have known their names in the exercise of due diligence.  *See id.*  Here, Plaintiff claims that it took him until July 23, 2010— almost four years after Kymberly was first removed on August 27, 2006—to learn the names of the officers involved in the removal.  Even if Plaintiff did not know the officers' names, the Court finds that he could have brought his claim against them as Doe Defendants in his prior action, Case No. 09-0252 SI (PR).  But he did not.  Instead, Plaintiff took him almost *five* years after his 2006 arrest and Kymberly's removal to file the instant action on June 14, 2011.  In addition, the Court notes that Plaintiff claims he allegedly discovered Defendants Basa and Phillips's involvement on July 23, 2010; however, he waited almost year before he filed the instant action.

Aside from stating that he only became aware of Defendant Basa's involvement upon reading the trial transcript in 2010, Plaintiff fails to show how he acted diligently in discovering

---

[3] Page number citations refer to those assigned by the Court's electronic case management filing system and not those assigned by Plaintiff.

United States District Court
Northern District of California

the critical facts of his claim, i.e., the names of the officers involved.  The record shows that Plaintiff was aware of Kymberly's removal in 2006 by OPD officers, and he concedes that he knew the officers were involved, but he did not know their names.  Dkt. 62 at 19.  While Plaintiff claims it took him four years to learn these officers' names, the Court finds that had Plaintiff acted diligently then he would have discovered their names sooner.  First, Plaintiff had actually encountered Defendants Basa and Phillips in 2006 because they had interviewed him after his arrest on August 27, 2006.  In addition, the record shows that Plaintiff's wife and older daughter also encountered Defendant Basa during the removal.  Plaintiff was aware or should have been aware that the removal had occurred by August 29, 2006, the filing date of the dependency petition, by August 30, 2006, the filing date of the Detention Report, or at the latest by the September 13, 2006 dependency court hearing.  The Court further points out that Plaintiff could have communicated with either his wife and older daughter after his arrest to discuss the removal—by mail or phone since he was incarcerated or even through his counsel if they were not communicating with him.  Plaintiff has submitted declarations in support of his opposition from both his wife and older daughter relating to the removal and their interaction with Defendant Basa. Dkt. 62, Exs. 2, 3.  Plaintiff does not explain why he failed to gather this same information in 2006, i.e., the names or even a description of the officers who spoke with them.  A diligent plaintiff could have made such inquiries and asked his own family members to describe the officers who were involved in the removal of his daughter.  Because Plaintiff had already encountered Defendants Basa and Phillips at his interview, he could have compared his wife's and older daughter's description of the officers and determined that the same officers who interviewed him were involved in the removal.  No such efforts were made by Plaintiff.  Instead, Plaintiff claims it took him until 2010—four years later—to learn these officers' names.  Therefore, because Plaintiff has failed to show that he acted diligently in discovering the names of the OPD police officers, the Court finds unavailing Plaintiff's argument for a delayed accrual date because he allegedly did not know the names of the individuals who violated his rights.[4]

_____

[4] While Plaintiff also claims he discovered that Defendant Phillips's involvement in the removal in 2010, Plaintiff states he only discovered the critical facts relating to Defendants

20

As explained above, the date the claim accrued was at the latest by the September 13, 2006 dependency court hearing.  Similar to the calculation above as to the accrual date of the claim against County Defendants, after two years of statutory tolling for incarceration, the two-year statute of limitations on Plaintiff's claims began to run on September 13, 2008 and ended on September 13, 2010.  Plaintiff did not file this action until June 14, 2011, nine months after the two-year statute of limitations expired.  Plaintiff's due process claim against the OPD Defendants, therefore, is also barred by the statute of limitations unless Plaintiff can show that he is entitled to an extension of the limitations period on equitable grounds below.

### 2.   Extending Limitations Period on Equitable Grounds

There are two doctrines which may apply to extend the limitations period on equitable grounds—equitable tolling and equitable estoppel.  *Lukovsky v. San Francisco*, 535 F.3d 1044, 1051 (9th Cir. 2008).  Equitable tolling focuses on "whether there was excusable delay by the plaintiff: 'If a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period, then equitable tolling will serve to extend the statute of limitations for filing suit until the plaintiff can gather what information he needs.'"  *Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002).  "Equitable estoppel, on the other hand, focuses primarily on actions taken by the defendant to prevent a plaintiff from filing suit, sometimes referred to as 'fraudulent concealment.'"  *Lukovsky*, 535 F.3d at 1051 (citing *Johnson*, 314 F.3d at 414).

Here, in his opposition, Plaintiff claims he should be entitled to equitable tolling, dkt. 48 at 20-21, and to equitable estoppel, dkt. 62 at 22-23.

### a.   Equitable Estoppel

First, Plaintiff claims that equitable estoppel applies because during his interview on

---

Phillips's involvement in the defamation claim on March 15, 2011, when his older daughter sent him the September 1, 2006 Oakland Tribune article.  Dkt. 62 at 21.  Similarly, the Court could also find unavailing any argument for a delayed accrual of the defamation claim against Defendant Philipps because Plaintiff fails to show that he acted diligently in discovering the critical facts of his claim, i.e., the statements in the September 1, 2006 Oakland Tribune article.  Plaintiff claims he only discovered the article on March 15, 2011; however, he fails to explain what prevented him from discovering it when the article was printed on September 1, 2006.  In any event, because the Court will be handling the merits of the defamation claim below it need not further address any statute of limitations issues as to this claim.

August 27, 2006, Defendants Basa and Phillips did not mention that they were involved in Kymberly's removal.  Dkt. 62 at 22.  Plaintiff claims these Defendants "fraudulently conceal[ed] the facts."  *Id.*  Such is not the case.  As explained above, had Plaintiff acted diligently then he would have discovered that Defendants Basa and Phillips were involved in Kymberly's removal. Contrary to Plaintiff's allegations, the fact that Defendants Basa and Phillips did not mention Kymberly's removal at the interview is not evidence of misconduct or "fraudulent concealment." When estoppel is sought against the government, "there must be *affirmative* misconduct (not mere negligence) and a serious injustice outweighing the damage to the public interest of estopping the government."  *Bolt v. United States*, 944 F.2d 603, 609 (9th Cir. 1991) (emphasis added).  At most Defendants Basa and Phillips's failure to mention Kymberly's removal could at most amount to negligence, which is not enough because it is *not* affirmative misconduct.  *See id.*  Accordingly, Plaintiff has not demonstrated that he relied on Defendants Basa and Phillips's misconduct in failing to file in a timely manner and thus he has not plead with particularity the facts which give rise to the claim of fraudulent concealment.  Accordingly, Plaintiff is not entitled to equitable estoppel, and the Court will now consider Plaintiff's claim of an entitlement to equitable tolling.

### b.   Equitable Tolling

While Plaintiff makes general arguments relating to his entitlement to equitable tolling, the Court construes his argument to mean that equitable tolling should apply: (1) based on the continuing violation theory; and (2) during the pendency of his prior civil rights action, in which he had raised claims relating to the loss of his parental rights over Kymberly.

### 1)   Continuing Violation Theory

The "related acts" continuing violation theory allows plaintiff to seek relief for events outside of the limitations period if a series of violations are related closely enough to constitute a continuing violation and that one or more of the acts falls within the limitations period.  *See Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001) (citations omitted).  However, if the "heart of plaintiffs' complaint does not stem from the policy . . . but rather from the individualized decisions that resulted from implementation of a policy[,] [then] . . . [t]hese individualized decisions are best characterized as discrete acts, rather than as a pattern or practice of discrimination."  *Cherosky v.*

1  *Henderson*, 330 F.3d 1243, 1247-48 (9th Cir. 2003) (holding that plaintiffs' allegation that

2  discrete acts, which fell outside the limitations period, were undertaken pursuant to a

3  discriminatory policy that continued to be implemented within the limitations period does not

4  extend the limitations period as to the time-barred acts).  In other words, "each time a policy is

5  invoked to deny an individual plaintiff's request, an independently wrongful, discrete act occurs, a

6  claim accrues, and the limitations period begins to run."  *Pouncil v. Tilton*, 704 F.3d 568, 579 (9th

7  Cir. 2012).

8        Plaintiff argues that the entire eighteen-month-long time frame that he was in dependency

9  court constitutes a continuing violation.  Dkt. 62 at 16.  Thus, Plaintiff argues that February 19,

10  2008—the final hearing when his parental rights were terminated—would have been when the

11  cause of action accrued and thus it would not have expired until four years later, on February 19,

12  2012.  *Id.*  Therefore, Plaintiff seems to claim that the instant complaint filed on June 14, 2011

13  would have then been timely.  The Court finds Plaintiff's argument to be without merit because

14  Plaintiff's dependency proceedings began with a discrete act—Kymberly's removal, which should

15  have notified Plaintiff of any alleged wrongful acts based on the removal; therefore, the date of

16  accrual would *not* be at the very last hearing on February 19, 2008.  *Compare Delaware State*

17  *College v. Ricks*, 449 U.S. 250 (1980) (concluding that limitations period commenced when

18  professor received letter notifying him of the denial of tenure and renewal of contract through the

19  end of the year—not when the contract expired because the termination was "a delayed, but

20  inevitable, consequence of the denial of tenure), *and  Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir.

21  2001) (rejecting plaintiff's claim of a continuing violation theory when she had notice of all the

22  wrongful acts she wished to challenge at the time she received original letter (outside the

23  limitations period) notifying her that she was permanently denied all mail privileges) *with Nat'l*

24  *R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) (stating that even if there was a prior,

25  related past act, courts must decide whether plaintiff's claim is based on an independent, wrongful,

26  discrete act, and if so, the limitations period begins to run from the date of that discrete act).

27  Accordingly, the Court finds that the continuing violation theory does not entitle Plaintiff to

28  equitable tolling of the limitations period.

United States District Court
Northern District of California

United States District Court
Northern District of California

### 2)   Prior Action – Case No. 09-0252 SI (PR)

As explained above, the record shows that Plaintiff had filed a prior action on January 21, 2009 involving the loss of his parental rights over Kymberly and against Alameda County Social Services Agency, DCFS and DCSF family maintenance worker Nathan Hobbs, alleging they had made defamatory statements that injured Plaintiff's reputation and caused him to lose parental rights.  *See* Case No. C 09-0252 SI (PR).  Specifically, Plaintiff argues that the statute of limitations should be equitably tolled for the period in which he sought relief from these other Defendants in his prior action.

Under California law, equitable tolling "'reliev[es] plaintiff from the bar of a limitations statute when, possessing several legal remedies he, reasonably and in good faith, pursues one designed to lessen the extent of his injuries or damage.'"  *Cervantes v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir. 1993) (quoting *Addison v. California*, 21 Cal. 3d 313, 317 (1978)).  Thus, in an appropriate case, the statute of limitations might be tolled for time spent pursuing a remedy in another forum before filing the claim in federal court.

Also under California law, equitable tolling is appropriate in a later suit when an earlier suit was filed and where the record shows:  "'(1) timely notice to the defendant in filing the first claim; (2) lack of prejudice to the defendant in gathering evidence to defend against the second claim; and, (3) good faith and reasonable conduct by the plaintiff in filing the second claim.'"  *Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131, 1137-38 (9th Cir. 2001) (en banc) (citing *Collier v. City of Pasadena*, 142 Cal. App. 3d 917, 924 (1983)).  Upon satisfying the three-pronged test, a plaintiff should be relieved from the limitations bar.  *Id.* at 1140.  "Application of the three-part test is mandatory."  *Cervantes v. City of San Diego*, 5 F.3d 1273, 1275-76 (9th Cir. 1993).

California has long refused to apply the equitable tolling doctrine to toll the statute of limitations on a claim for a distinct wrong that was not the basis of the earlier proceeding. *Daviton*, 241 F.3d at 1141.  For example, an attempt to amend a complaint in an existing action to add a claim that is completely unrelated and that does not arise from the same transaction or occurrence has been found not to constitute good faith and reasonable efforts to pursue the claim

1   in an alternate forum or case.  *See Fink v. Shedler*, 192 F.3d 911, 916-17 (9th Cir. 1999).

2        "The timely notice requirement essentially means that the first claim must have been filed

3   within the statutory period."  *Collier*, 142 Cal. App. 3d at 924.  Here, Plaintiff filed his prior action

4   on January 21, 2009.  As discussed above, under California law Plaintiff was required to file his

5   claim against both the County and OPD Defendants by September 13, 2010 at the latest.

6   Therefore, based on the dates alone, Plaintiff seems to meet the timely notice requirement.

7        The County Defendants argue that Plaintiff's "bare assertion that [they] were 'surely'

8   aware of the prior lawsuit does not satisfy the notice element of equitable tolling."  Dkt. 51 at 2.

9   They further argue that because they were not parties to the suit, "there is no evidence indicating

10   either were on actual notice on actual or constructive notice of the previous claims or factual

11   allegations."  *Id.*

12        As mentioned above, the Ninth Circuit has recognized that California does not apply the

13   equitable tolling doctrine to toll the statute of limitations on a claim for a distinct wrong that was

14   not the basis of the earlier proceeding.  *Daviton*, 241 F.3d at 1141.  Plaintiff's prior action

15   involved a suit against entirely different defendants, including Mr. Hobbs, who handled the

16   dependency matters *after* the County Defendants were no longer involved in the case.  *See* Case

17   No. 09-0252 SI (PR).  Plaintiff may have put at issue Mr. Hobbs's allegations that related to

18   Plaintiff's parental rights being terminated, and previous reports written by the County Defendants

19   may have been the basis for such allegations; however, without any specific accompanying

20   allegation against then non-party County Defendants, his allegations against Mr. Hobbs are not

21   enough to put any court on notice that he is bringing a due process claim against the County

22   Defendants.  *See Daviton*, 241 F.3d at 1141 ("As the courts have explained for years, the equitable

23   tolling doctrine requires that the same wrong serve as the predicate for the earlier and later

24   proceedings to make sure defendant received proper notice.").  Put simply, Plaintiff's prior case

25   was not a "reasonable and good faith effort to pursue his [due process claim against the County

26   Defendants] in an alternate forum or case."  *Fink v. Shedler*, 192 F.3d 911, 916 (9th Cir. 1999).

27   Therefore, Plaintiff does not satisfy the three-pronged test, and he is not entitled to equitable

28

United States District Court
Northern District of California

25

1    tolling based on his prior case.[5]

2         In sum, Plaintiff's due process claims against the County and OPD Defendants are

3    DISMISSED with prejudice as time barred, and Defendants' motions for summary judgment is

4    GRANTED as to these claims.[6]

5         **D.    Analysis of Defamation Claim Against Defendant Phillips**

6         The only remaining claim is Plaintiff's defamation claim against Defendant Phillips

7    stemming from the September 1, 2006 Oakland Tribune article, in which Defendant Phillips

8    allegedly made "unfounded and unproven statements" that were used to remove the child and

9    amounted to defamation of character.  Dkt. 3 at 1.

10        Generally, "defamation" refers to the publication of false statements about a party and may

11   be alleged as a cause of action under state tort law.  In California, a written defamatory statement,

12   known as "libel," is defined as "a false and unprivileged  publication by writing . . . which exposes

13   any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or

14   avoided, or which has a tendency to injure him in his occupation."  Cal. Civ. Code, § 45.

15        An allegation of defamation, without more, does not state a claim under 42 U.S.C. § 1983.

16   *See Paul v. Davis*, 424 U.S. 693, 701–10 (1976); *see also Franklin v. Oregon*, 662 F.2d 1337,

17   1344 (9th Cir. 1981) (claim of slander by police officer may allege tort claim in state court, but is

18   not cognizable in federal court because there is no violation of a federally-protected right).  This is

19   so because a person's reputation, standing alone, is not a liberty or property interest protected by

20   due process—i.e., an interest sufficient to give rise to a federal civil rights action—unless it is

21   accompanied by "some more tangible interests."  *Paul*, 424 U.S. at 701.  In defamation

22   _____

23        [5] While the Court has considered Plaintiff's previous argument that he is entitled to
     equitable tolling based on his prior case as to his claims against the OPD Defendants, he now
24   appears to withdraw such an argument in his opposition.  Dkt. 62 at 19.  Plaintiff argues as
     follows, "There is no need to apply equitable tolling to the instant case, as the complaint [against
25   the OPD Defendants] was 'timely filed' once [he] learned [the OPD] Defendants['] names."  *Id.*
     Nevertheless, the Court has still decided to address his previous argument for equitable tolling.

26        [6] Defendants also contend that Plaintiff's action is barred by issue preclusion, the *Rooker-*
27   *Feldman* doctrine, as well as absolute and qualified immunity; however, the Court need not
     address these alternative reasons for dismissal because the due process claims have been found to
28   be time-barred.  Meanwhile, the remaining defamation claim against Defendant Phillips will still
     be considered below.

United States District Court
Northern District of California

1  jurisprudence, this has become known as the "stigma plus" test. *See Siegert v. Gilley*, 500 U.S.

2  226, 234 (1991).

3  Alteration or extinguishment of a right or status previously recognized by state law

4  constitutes such a "tangible interest" and satisfies the "stigma plus" test. *Paul*, 424 U.S. at 711.

5  "[T]here is no question that parents have a constitutionally protected liberty interest in making

6  decisions about the care, custody, and control of their children." *Miller v. California*, 355 F.3d

7  1172, 1175 (9th Cir. 2004); *see also Troxel v. Granville*, 530 U.S. 57, 66 (2000) (parents have a

8  "fundamental right" to make decisions concerning the care, custody, and control of their children).

9  Indeed, this situation presents circumstances sufficient to "trigger the procedural guarantees of the

10  Due Process Clause of the Fourteenth Amendment." *Miller*, 355 F.3d at 1175; *see Troxel*, 530

11  U.S. at 66 ("it cannot . . . be doubted that the Due Process Clause of the Fourteenth Amendment

12  protects the fundamental right of parents to make decisions concerning the care, custody, and

13  control of their children"). It necessarily follows, then, that parents are entitled to certain

14  procedural protections before their fundamental right to make decisions regarding the care,

15  custody and control of their children are altered or extinguished. Those procedural protections

16  are, of course, notice and an opportunity to be heard.

17  Here, the record demonstrates that after Plaintiff was arrested and juvenile dependency

18  proceedings were initiated regarding Kymberly, up until the time the dependency court terminated

19  its jurisdiction over Kymberly, awarded custody to her mother and terminated Plaintiff's parental

20  rights, Plaintiff received more than sufficient procedural protections guaranteed by due process.

21  *See Paul*, 424 U.S. at 711. Specifically, Plaintiff received notice of the dependency court

22  proceedings, appeared in person at both hearings, waived his constitutional rights regarding the

23  proceedings and submitted the petition without challenging any of the evidence presented therein.

24  Further, Plaintiff's amended complaint specifically alleges that Defendant Phillips to the

25  Oakland Tribune that "'[he] and his wife [and] their 18 yr. old son, all smoked crack cocaine in the

26  presence of the child that was seized,' and that this was the reason for the seizure of the child."

27  Dkt. 8 at 11. Plaintiff later attached the relevant article to his "Declaration By and Of Plaintiff

28  Edward Vincent Ray, Jr. as to the Authenticity of Exhibits Submitted Herein," and it states:

27

1

2

> Phillips said the men and the mother spent some of the money [from the robbery] on crack cocaine, which they smoked in the motor home with the youngest daughter present.

3

4

> The mother was released after questioning, but Child Protective Services took the 4-year-old into custody because of the crack exposure.

5 Dkt. 63 at 31.  This alleged statement about Plaintiff's drug use mirrors certain statements

6 contained in the August 30, 2006 Detention Report.  Dkt. 8, Ex. A at 4.  While Plaintiff seems to

7 dispute this statement, in his prior action involving a similar defamation claim against Defendant

8 Hobbs, this Court deemed that Plaintiff had implicitly conceded the truth of the statements set

9 forth in the dependency proceedings.  Dkt. 27 in Case No. 09-0252 SI (PR) at 11.  Specifically, the

10 Court stated:

11

12

13

14

15

16

17

18

> Plaintiff cites to no authority, and the court is unaware of any, that points to a constitutional duty placed on Hobbs to investigate and/or correct the allegations set forth by Shaddick in the juvenile dependency petition.  Given that plaintiff submitted the juvenile dependency petition without contesting any of the allegations contained therein—after being advised that if he did so the court would probably find the petition true—it is unclear how defendant Hobbs would have been on notice that there was any dispute as to the accuracy of the allegations.  As noted earlier, although plaintiff alleges that seven of the eight allegations in the juvenile dependency petition were not proven, he fails to point to any evidence that supports his assertion.  "Sweeping conclusory allegations will not suffice to prevent summary judgment."  *Leer*, 844 F.2d at 634.[7]

19

20

21

22

23

24

25

26

27

> Perhaps most fatal to plaintiff's claim is that at the first opportunity he had to dispute the allegations in the juvenile dependency petition—the September 13, 2006 jurisdictional hearing at which plaintiff appeared in person—he instead waived his constitutional rights and submitted the petition on the basis of Shaddick's report, implicitly conceding the truth of the allegations.  And, on October 3, 2006, when plaintiff again had an opportunity to dispute the allegations—in person—he again failed to object to the admission of Shaddick's reports and the information contained therein.  It was at this hearing the juvenile court adjudged Kymberly a dependent child of the court, denied reunification services to plaintiff, and transferred the matter to DCFS—ultimately to defendant Hobbs—for monitoring.  Even after defendant Hobbs became involved in monitoring Kymberly's case, the record shows plaintiff was represented by counsel at the juvenile dependency proceedings and that the court adopted the findings in defendant Hobbs' written reports without any objection by plaintiff through

28

---

[7] *Leer v. Murphy*, 844 F.2d 628 (9th Cir. 1988).

counsel.

*Id.* at 10-11 (footnote added).

Similarly, here on this record, Plaintiff makes a conclusory statement that Defendant Phillips's allegedly defamatory statements were "unfounded and unproven" and used to remove Kymberly.  However, again, such sweeping conclusory allegations will not suffice to defeat summary judgment.  *Leer*, 844 F.2d at 634.  Plaintiff has failed to go beyond the pleadings and, by his own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial" on his defamation claim against Defendant Phillips.  *See* Fed. R. Civ. P. 56(e).  Due to Plaintiff's failure to identify, with reasonable particularity, evidence demonstrating a genuine issue for trial, Defendant Phillips is entitled to judgment as a matter of law.[8]  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 323.

Accordingly, the OPD Defendants' motion for summary judgment is GRANTED as to Plaintiff's defamation claim against Defendant Phillips.

## CONCLUSION

For the foregoing reasons, the Court orders as follows:

1.     Plaintiff's motion to strike the aforementioned portions of Defendants Shaddick and Nolan's motion for summary judgment is DENIED.  Dkt. 47.

2.     Defendants Shaddick and Nolan's motion to strike Plaintiff's supporting documents is DENIED as unnecessary.   Dkt. 68.

3.     Plaintiff's "Motion for Additional Sanctions" is DENIED.  Dkt. 60.

4.     Defendants' motions for summary judgment are GRANTED as to all claims against all Defendants, who are entitled to judgment as a matter of law.  Dkts. 42, 56.

5.     Because the aforementioned motions for summary judgment have been granted, the Court DENIES as moot Plaintiff's remaining "Motion to Strike Defendants' Affirmative Defenses and the Reservation Clause(s) if any."  Dkt. 46.

6.     The Clerk of the Court shall enter judgment in favor of all Defendants, terminate all

---

[8] The Court's finding that Defendant Phillips is entitled to summary judgment as a matter of law on Plaintiff's defamation claim obviates the need to address the OPD Defendants' arguments regarding an entitlement to qualified immunity.

United States District Court
Northern District of California

1   pending motions, and close the file.

2       7.      This Order terminates Docket Nos. 42, 46, 47, 56, 60 and 68.

3       IT IS SO ORDERED.

4   Dated: March 27, 2015

5   _____

6   YVONNE GONZALEZ ROGERS
    United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

30